Next, could we hear the parties in Schnauder v. Gibens? Good morning, Your Honor. Let everybody get settled. You know, I'd like to begin by saying a very... Let everybody get settled. Oh, my apologies. Okay. Yeah. I'd like to begin with a very simple statement that homo sapiens, human beings, breathe through both their nose and their mouth regularly. I'd ask the court to take judicial notice of it. I asked Judge Sterling Johnson to take judicial notice of that. And I begin with that because my client was denied medical treatment for an open brain fracture, a broken nose, an open nasal fracture, for over 300 days. Now, we've got the policy proceeding only as against the policy-making entities, not against the individuals, right? That's correct. Okay. And looking to the ADA and 504 claim, I submit that the pleading which talked about, which was headaches and bleeding and extreme pain, would set forth a sufficient factual predicate under both Iqbal and Twombly to set forth a claim under the Americans with Disability Act, meaning that he had significant impairment of a life function, even though I didn't state the words that he had difficulty in breathing, because common sense would tell you, based on the nature of the accident and the nature of the injuries and the duration of time in which he was denied medical treatment. But you have an obligation under the ADA to show that it's a long-term problem, right? And Dr. Lachman just says he needs surgery to fix it, and there's no guarantee that his nose will be returned to its pre-injury condition. Is that enough to say this is going to be maybe not permanent, but certainly long-lasting  I would say that without the surgery, he'd be disfigured. He would suffer disfigurement. My concern is that even if we assume that it's a disability, it's not the reason he's denied access to some public benefit or accommodation. It's the reason he needs access. And that's not what the ADA and Rehabilitation Act deal with. I think that falls under your Eighth Amendment claim, if anything. But how do you satisfy the causation on the ADA Rehabilitation Act? Well, looking at cases, albeit from Texas, because to my knowledge, the circuit, the Second Circuit hasn't addressed this, and no other circuit has fully addressed it. Because we've had lots of rehabilitation cases that we've not addressed. Well, the question is, I found cases out of Texas, the Nojosa case, where the court said that the denial of these services caused my client to be treated differently in that he suffered more pain and suffering than other non-disabled inmates. You see? So my client being stuck in jail with a broken nose, when the doctors... As Judge Raggi points out, that's a product of the condition. It's not a product of the discrimination based on that condition. How do you answer that question? The court in Nojosa stated that it did. I'd like to... Maybe this court would disagree, but it stated... Just give me a second. I'd like to get the exact quote and be accurate. It stated that... In the prison context, failure to make reasonable accommodation to the needs of a disabled prisoner because of a lack of an accommodation may have the effect of discriminating against a prisoner because a lack of an accommodation may cause a disabled prisoner more pain and suffering than a non-disabled prisoner. What accommodation did he ask for? He asked to be sent and get his nose fixed. That's what he asked. That's what Dr. Kramer, in July of 2012, ordered him to be sent to Bellevue for E&T. We're another doctor in November. That's treatment. He needs to be treated. That's not what the ADA is about. That would be, look, I can't participate in some education program because I have a disability and I can't get there without an accommodation. My client, we submit that under Georgia, and in the First Circuit case, I cited him in my reply brief, that denial of medical services does fall under the ADA. My client was denied the medical treatment provided by every inmate. Every inmate. That creates a problem for you on policy if they're providing it to everybody and this was the one instance where they didn't. That gets into the Eighth Amendment question about whether you've got a policy here or a one-time denial, which, as I said, you're not suing the individual officers or you're not pursuing that claim. Why isn't the concession that you just made fatal to your Monell claims? Because if you look at the facts of the case, under Monell, the inferences, I couldn't, I stated it in my brief, I couldn't set forth . . . You just told Judge Raggi that one of the things that you're objecting to in this lawsuit is that your client didn't get the same kind of treatment that all the other inmates got. And so, for the Monell claim, you've got to establish that this violation of whatever it was was pursuant to a policy, which you just told us didn't exist. In my papers, I stated that there was a de facto policy that inmate complaints are downplayed. What I did concede to was that I didn't have other instances, specific other instances, to plead in my papers. I asked Judge Johnson for leave to replead. In addition, I argued that the facts themselves tend to raise an inference of gross negligence on the part of the city and on the part of Commissioner Shero. There is no tort claim that you are articulating. Well, my client . . . The doctor's instructions were deliberately ignored. I mean, that's in the record. That's in the pleadings. And if you read the cases, there's a case where even one action, the Turpin case, the Second Circuit case, one action, one beating, can itself, if it's severe enough, demonstrate the existence of a lack of review, of gross negligence. My client was denied medical treatment for 300 days. At a base minimum, I believe I should have been given leave to replead because I wouldn't be within my custody and control. I wouldn't have access to that on the motion to dismiss, you see. And that's the big problem with Hick, Ball, and Twombly. They closed the door on it. And it may be the death knell of Monell. I've read literature. I believe that I should have been given . . . The practice or policy is to ignore those needs to limit the ability of the prisoners to be released. That it's being contrived . . . they believe it's being contrived to reduce incarceration. Is that your own client's claim, that they did this to him so he wouldn't be released earlier? Because if he was released, it would just be for the surgery and they'd have to  He should have been . . . I don't know, but he should have been treated in July. A doctor says, I refer you to Bellevue for the surgery. He goes to Bellevue for the surgery and he has to go back to Rikers, doesn't he? How is his claim consistent with what you claim the Monell policy is? I mean, the way you've written it is to say they do this the DOC does this because prisoners have come up with this idea that if they have these medical procedures, they can be released after confinement early. Is that what your client did? My client basically stated, yeah, in talking to people there. He really didn't have any real reason why he was denied and sent over. I realize that under Iqbal and Twombly, Monell claims are going to be much harder to make out. They will be set aside at the pleading stage. You've observed an argument, though it's only mentioned in passing in your brief, that you were denied leave to replead. I'm not sure I understand that you have a good faith basis to plead a Monell claim given some of your answers today. What's the good faith basis for pleading a Monell claim? Well, I would have to have some discovery in time. You don't get to conduct discovery first and then replead, so am I to understand you don't really have any facts beyond those that are in your present complaint? That's correct. Okay. Thank you. Why don't we hear from your adversary? Good morning, Your Honors. May it please the Court. Tianjuli Wang for Defendant Apeliz. This Court should affirm the District Court's decision to deny Schnauter's claims under the ADA, the Rehabilitation Act, and Monell. The District Court's decision was correct for numerous reasons. As a preliminary matter, Schnauter has made several key and expressed concessions of fact that are particularly relevant here. First, by Schnauter's own complaint, he sustained the broken nose prior to entering custody. Second, he concedes that just two days after he entered custody, a Rikers doctor examined him and referred him to Bellevue. Third, he has admitted that subsequent delays in surgery were caused by Bellevue and inclement weather alone, not by dog personnel. The weather was bad for a year? Well, the Rikers unclear whether Bellevue rescheduled later. At least the first rescheduling was due to post-sanding. Can you stand before us and say, well, you know there was bad weather and that's why he didn't get the surgery for a year? What's the explanation for the delay of a year? Bellevue is not a defendant or appellee in this case and we have no information on the record why there was a delay. Your client has the obligation of treatment. You would have some obligation to be either prompting the hospital or something. I'm not sure I understand your argument for why your client lets it go for a year. Well, I believe the record indicates, and by Schnauter's own filing, that we had contacted Bellevue and Bellevue said they had to reschedule and there was prompting on our end. It's just we can't force the hospital to conduct surgery or make a doctor available if they're not otherwise available. Well, isn't the Department of Corrections responsible for medical treatment of inmates? Yes. Because he was lying on the floor bleeding to death. It's not a defense to say that Bellevue couldn't see him. That's true, but that's a very different situation from what's presented here. He needed medical help and what you're telling us is that Bellevue couldn't accommodate him. Bellevue told us that they don't do these kinds of surgeries if it's too hot or too cold or that we don't have a surgeon that we want to assign to this patient at this time. You can't finesse your responsibilities by pointing to excuses like that. I agree with that, but as my adversary just conceded at the podium, we did offer similar treatment to other inmates and this was a different situation than bleeding on the floor. It doesn't present a claim under the ADA. You had an obligation to get this man medical treatment. And the fact that Bellevue said we won't do it now because of the weather doesn't get you, doesn't absolve you of the responsibility to get this man medical treatment. I agree and we did contact, we did follow up with the hospital and try to get You're confusing effort with results. We shouldn't confuse effort with results. You were responsible for the results. My adversary has said in no case of saying that we must offer surgery to someone for example disability which he claims. We are on dismissal so there's been no discovery. That's one of plaintiff's points. You stood up and suggested that concessions by the plaintiff explained why it took a year in delay. I think the questions should be signaling to you by now that you're not helping your case with this kind of an argument. You're here to defend the dismissal. What's your defense for the dismissal of this case? Going to the ADA and rehabilitation claims, there are three independent reasons. First, Schnauter does not allege a chronic condition. A broken bone by this court's case law is not a chronic condition. Is it a chronic condition when it's allowed to persist for a year? It may but he has not alleged that. The most he has alleged was that he saw an independent doctor 10 months after release and that doctor said that the injury might lead to permanent change in appearance which he doesn't even allege a permanent breathing condition. He focuses on the appearance of the nose. Secondly, Schnauter has failed to allege the denial of medical treatment caused by animus against disability. In fact, he has alleged no discrimination at all because what he is really challenging here is the availability of medical treatment. For something that does not qualify as a disability. Further, the district court properly dismissed the Monell claim because that claim requires a constitutional violation by policy or custom. This court has made clear and the Supreme Court has made clear that a single incident is insufficient to allege a municipal policy or custom. Even here, there was no clear single incident in that he was not able to point to individuals who caused delay in any way and he just said at the podium that. He was able to point to the delay. Why does he need to point to individuals? You all have, as Judge Parker said, the prison system has the responsibility for his care. He's got a broken nose and it's a year later and it's still not treated. Why isn't that enough? Well, that's assuming that's a single incident but it doesn't point to a municipal policy involving a policy official. You've tried to suggest that the problem was his inability to identify individuals and I'm trying to understand how that informs anything. I think there was no clear. He said that there was no clear cause for why Doc was involved in the delay other than he expressly conceded that the delay was resulting from Bellevue. Those are his words in his voluntary dismissal motion on page 354 of the appendix. I'm just quoting what he is saying in the filing. Further, his own filings, my adversary confused the situation a little bit because he was allowed to file an amended complaint and that amended complaint and even in his brief on appeal, he has consistently maintained that he needs further discovery to make sufficient factual allegations. So that makes clear that dismissal was accurate. As the Supreme Court advised in Twombly, a complaint does not unlock the doors of discovery for a plaintiff armed only with conclusions and that is exactly what we have here. For those reasons, we ask that you affirm the district court's decision. Thank you. Why is a broken nose merely a conclusion? Not the broken nose itself, but with regard to Monell, there is no allegation of municipal policy or custom. He barely says that there is a municipal policy or custom of not providing treatment. That itself is insufficient to allege a claim under Monell and Iqbal in Twombly. Thank you. Mr. Adenoff, you're reserved two minutes. Could I just ask you a question, Mr. Adenoff, before you get started? Usually we see these cases, the defendants include individual defendants like Dr. Kramer, who was a DOC employee, who treated a problem but didn't do a good enough job with it and then there's an Eighth Amendment claim. We don't see any of those kinds of defendants here, individual physicians, nurses, medical professionals. Those are the kinds of cases we see more typically. Why is Dr. Kramer not a defendant and these other people employed by the department? Because we felt that he did the right thing. He referred my client for surgery and at that point in time, we had some evidence that there was a transportation unit that had sent people to Bellevue and in the valentine order that we received, we were told that Bellevue makes the call as to whether or not the inmate is transferred over. That's why. So I didn't feel it appropriate to sue somebody who we felt had done, had behaved properly. So the doctor recommends, and you said you understand it's Bellevue that decides when? We later, after the valentine order was responded to. So why do you think Bellevue isn't responsible? That's what your adversary tried to argue to us. By the time Judge Johnson's decision came down, I was time barred. I didn't bring the case with me. That may explain it, but how does that allow you to show that the party you've sued now is responsible? I would submit that the facts, that someone could be sent to Bellevue in July and not get sent over there. He is sent over in February and then returned back. It shows gross negligence on the part, which can sustain liability under 1983 in Monell. It's in my briefs. Sufficient enough to where discovery would if I were permitted, would yield other instances. Who's responsible for knowing that? The doctor? Who within the Bureau of Corrections is responsible? The commissioner. The commissioner is supposed to know of every medical order that's been sent? No, but they should have reasonable policies in place. Because I'm trying to figure out how the difference here is negligence versus gross negligence because the former certainly won't support your claim. Absolutely not. Why isn't this just your client If there's no review, if there's no meaningful review, then it's gross negligence. But wouldn't the review be by the doctor who sent him that, yes indeed, my patient was taken over there as he was supposed to be? No. Before you sit down, tell me I want to be sure I have firmly in my mind, what claims are in the amended complaint which was denied that you wish to pursue? The ADA claim. I think that would be the strongest claim that I have. For ADA, what else? The Monell claim, I should be allowed to replete it. That's it. I don't have anything else. Not pursuing the Rehabilitation Act I think aren't they decided together in tandem? They're not the same though. They're often brought in the same action, but they are not the same claim. So I guess I would submit that the Rehabilitation Act would be. So it's the same claims that are in your preliminary complaint and you have no new facts. You need discovery to have new facts. That would be outside of the record. I believe that on appeal, I'm limited to the record below. Thank you. We're going to take the matter under advisement.